UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Criminal Case No.  10-cr-00455-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  GEORGE JOHN SCHULTE, aka JOHN SCHULTE,
2.  OBINNA ADIGHIJE, aka LARRY ADIGHIJE,
3.  TRUNG PHAM, and
4.  HERNAN RICAURTE,

      Defendants.

---

## ORDER

---

THIS MATTER comes before me on Defendants' remaining objections to the Government's *James* submission, as set forth in Defendants' Joint Supplemental Objections to the Government's *James* Submission [ECF No. 149].[1]  Having reviewed the Government's evidence and the arguments of counsel, I make the following findings.

## I.    BACKGROUND

This case involves allegations that the Defendants and other employees at Spectranetics (herein referred to as either "SPNC" or Spectranetics) were involved in the importation and subsequent use in humans of two different types of medical devices

---

[1]I note that Defendant Hernan Ricaurte filed a Notice of Disposition on July 27, 2011 [ECF No. 153], and that I accepted his change of plea at a hearing on August 11, 2011. [ECF No. 167].

not approved by the FDA.  The medical devices at issue include: (1) surgical guidewires used in coronary and perpherial angioplasty or atherectomy procedures, which were manufactured by a Japanese company called "FMD"; and (2) peripheral transluminal angioplasty ("PTA") balloons intended to be inserted into vascular tissue through catheters and inflated in order to compress arterial plaque against vessel walls, which were manufactured by a German company called "BMT."  The Second Superseding Indictment (hereinafter "the Indictment"), as well as the parties, commonly refer to the two types of devices simply as "FMD guidewires" and "BMT balloons."  I will use nomenclature throughout this order.

On February 4, 2011 Defendants Schulte and Pham filed a Joint Motion for Pretrial Determination of Admissibility of Co-Conspirator Statements Under Fed. R. Evid. 801(d)(2)(E) [ECF No. 80].  On February 25, 2011, in response to Defendants' motion, the Government submitted a *James* proffer and log [ECF No. 88].  On April 8, 2011, the Defendants filed Joint Objections to the Government's *James* Submission [ECF No. 116] and the Government filed a Reply to Defendants' Response on April 18, 2011 [ECF No. 117].  During a hearing on April 28-29, 2011, the Government presented evidence concerning, among other things, the existence of a conspiracy among each of the Defendants.

During the hearing, the Government withdrew numerous statements from its *James* log.  At the conclusion of the hearing, I ordered the parties to file additional briefing explaining their objections to the remaining statements proffered by the Government.  The Defendants submitted their Joint Supplemental Objections to the Government's *James* Submission [ECF No. 149] on June 15, 2011.  The Government

2

filed its Response to Defendants' Joint Supplemental Objections to the Government's *James* Submission [ECF No. 152] on July 20, 2011.

## II.   LEGAL STANDARD

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of a conspiracy." Fed. R. Evid. 801(d)(2)(E).  Before admitting purported coconspirator testimony as non-hearsay, a district court must determine that the statements fall within 801(d)(2)(E)'s definition. *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

In order for statements to be admissible under Rule 801(d)(2)(E), the proponent of the evidence must establish, by a preponderance of the evidence: "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Hall*, 473 F.3d 1295, 1302-3 (10th Cir. 2007) (quotations and citations omitted); *see also Unites States v. Lopez-Guiterrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).  To make these factual determinations, the district court may hold a "James" hearing outside the presence of the jury. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995); *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (setting forth a pretrial proceeding enabling the district court to determine whether coconspirator statements were admissible at trial under Fed. R. Evid. 801(d)(2)(E)).  A district court may also provisionally admit the statements on the condition that the prosecution "connect up" the evidence and prove the existence of the predicate conspiracy through trial testimony or other evidence. *Owens*, 70 F.3d at 1123 (citing

*United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994).

Because the admissibility of these statements is a preliminary determination governed by Rule 104(a), "the district court has the discretion to consider any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial." *Owens*, 70 F.3d at 1124. Generally there must be some evidence other than the proffered statements themselves, but the required level of independent evidence is low. *See United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993) (suggesting that independent evidence does not have to be substantial); *see also United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) ("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted, along with the independent evidence tending to establish the conspiracy.").

## III.   LEGAL ANALYSIS

### A.   Existence of and Participation in, a Conspiracy

Before any statements may be admitted, the Government must first demonstrate the existence of a conspiracy and show that the declarant and the Defendants were members of that conspiracy. To prove that a conspiracy existed the Government must show: (1) two or more persons agreed to violate the law, (2) the defendants knew the essential objectives of the conspiracy, (3) the defendants knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent. *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005). To prove knowledge of the essential objectives of a conspiracy, the government does not have to show the

defendants knew all the details or all the members of a conspiracy. *Id.* "Rather, the government only needs to demonstrate the defendant shared a common purpose or design with his alleged coconspirators." *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006) (citing *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992). Direct evidence is not required and the conspiracy may be inferred from circumstantial evidence. *United States. v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986) (citations omitted).

Next, the Government must prove that the declarant and the defendant were both members of the conspiracy. With respect to this element, the "connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt." *United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990) (citations omitted). Furthermore, "[a] defendant who acts in furtherance of the object of the conspiracy may be presumed to be a knowing participant. *Id.* The defendant's connection to the conspiracy may also be established based on circumstantial evidence. *Id.* (citations omitted).

### 1.    Named Defendants

Count one of the Second Superseding Indictment (hereinafter "the Indictment") charges the Defendants with conspiracy to defraud the United States, and in particular, two agencies of the United States–the Food and Drug Administration ("FDA") and Customs and Border Protection ("CBP"). [ECF No. 134]. Count one specifically alleges that:

"In or about January 2005 and continuing until in or about October 2008, within the State and District of Colorado and elsewhere, the defendants,

5

1. GEORGE JOHN SCHULTE, aka JOHN SCHULTE
2. OBINNA ADIGHIJE aka LARRY ADIGHIJE
3. TRUNG PHAM, and
4. HERNAN RICAURTE,

did knowingly conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to defraud the FDA and the CBP, agencies of the United States, for the purpose of impeding, impairing, obstructing and defeating their lawful governmental functions of inspecting, taxing, approving, evaluating and clearing medical devices imported into the United States, and medical devices distributed in the United States, in interstate commerce.

(Second Superseding Indictment ¶ 17).

The Indictment also describes the manner and means by which the Defendants conducted the conspiracy to defraud the FDA and the CPB.  The Indictment alleges that the Defendants "imported medical devices into the United States by false declarations regarding the description, value or uses for which the medical devices were imported, thereby defeating the lawful governmental functions of CBP and the FDA" (¶ 18); that they "introduced and delivered for introduction into interstate commerce medical devices that were adulterated and misbranded in that they were not approved nor cleared by the FDA, nor exempt from approval or clearance, thereby defeating the lawful governmental functions of the FDA" (¶ 19); that they "delivered unappoved and uncleared medical devices for use in humans." (¶ 20); and that the Defendants "concealed their conduct from internal investigators at SPNC and investigators from the FDA and Department of Homeland Security." (¶ 21).  The next sections of the Indictment describe overt acts made in furtherance of the conspiracy regarding both the BMT balloons and the FMD guidewires.

I find that the Government has met its burden to show that the conspiracy

outlined in paragraph 17 of the Indictment existed and that the conspiracy included the named Defendants.  Special Agent Burke, an agent with the FDA's office of criminal investigation, testified regarding the existence of the conspiracy as alleged in the Indictment and the participation of each of the named Defendants in that conspiracy. Agent Burke testified that he was assigned to investigate Spectranetics after a former Spectranetics employee brought a whistle-blower complaint. (*James* Hr'g Tr. 8, April 28-29, 2011). That whistle-blower, Scott Schlessinger, along with two other former employees, including Anton Benitez, provided detailed information regarding the conspiracy at issue in this case. (*Id.*).  Following that complaint, the FDA obtained and executed a search warrant on September 4, 2008 and began a formal investigation that included numerous witness interviews as well as reading though "thousands" of e-mails. (*Id.*)

Based on his witness interviews and review of Spectranetics correspondence, Agent Burke testified that John Schulte, as the CEO of Spectranetics was the leader of the conspiracy and was "involved in all aspects of the conspiracy."  (Hr'g Tr. 9).  He testified that Hernan Ricaurte was a consultant for Spectranetics and that he "facilitated the importation and actually false declaration of the FMD guidewires into the United States."  (Hr'g Tr. 15).  Agent Burke stated that Defendant Adighije "was involved in aspects of the BMT catheter evaluations" and that he traveled to Germany to meet with executives at BMT, including Knut Sauerteig. (Hr'g Tr. 26).  According to Agent Burke's interview with BMT executives, it was clear that Mr. Adighije knew that the BMT balloons were going to be used inside humans. (*Id.*).  Finally, Agent Burke testified that Defendant Pham provided the BMT balloons to particular doctors for use in humans.

(Hr'g Tr. 20).  Based on the totality of Agent Burke's testimony (including the examples quoted above) the Government's proffer, and the statements listed in the Government's *James* log, I find that the Government has met its burden to show that a conspiracy existed and that the conspiracy included each of the named Defendants.

### 2.    Tsyoshi Terashi

In their Joint Supplemental Objections [ECF No. 149], Defendants object to the admission of statements made by Tsyoshi Terashi, the CEO of the Japanese Company FMD (manufacturer of the FMD guidewires) on the grounds that Mr. Terashi was not a member of the conspiracy charged in this case.  Defendants argue that Mr. Terashi was not aware of the conspiracy's essential objectives because he didn't know the wires would be used in humans and because he was concerned with the customs laws of Japan, not the United States.  Defendants specifically challenge the following statements, listed by identifying number from the Government's *James* log: 8, 11, 16, 22, 31, 42, 45, 60, 61, 62, 63, 110, 117, 130, 232, and 293.

The Government responds that Mr. Terashi is an unindicted co-conspirator and that all of the statements in the log by Mr. Terashi were made in furtherance of the conspiracy.  In particular the Government notes that Mr. Terashi participated in the creation and distribution of double invoices that falsely declared the medical guidewires and that Mr. Terashi knew the guidewires would be used in humans–thus making him aware of the central objectives of the conspiracy.

I find that the Government has met its burden to show that Mr. Terashi was a member of the charged conspiracy.  Agent Burke testified that Mr. Terashi is cooperating with regard to the investigation and prosecution of this case.  (Hr'g Tr. 28).

Further, based on Agent Burke's interviews with Mr. Terashi, I find there is sufficient circumstantial evidence to conclude that Mr. Terashi was a member of the conspiracy. First, Agent Burke testified that Mr. Terashi assisted Spectranetics in importing the FMD guidewires by affixing easy-to-peel-off labels reading "not for human use" on the FMD guidewires prior to sending the wires into the United States.  (Hr'g Tr. 16).  Mr. Terashi affixed the labels at the request of Ricaurte.  Despite Mr. Terashi affixing the easy-to-peel-off "not for human use" labels, he nevertheless denied to Agent Burke that he knew the medical guidewires would be used in humans.  (*Id.*)  Mr. Terashi's actions in affixing easy-to-peel-off "not for human use" labels, coupled with the additional statements in the *James* log, however, indicate otherwise.  As the Government notes, in statement number 60, an e-mail from Mr. Terashi to Defendant Ricaurte, Mr. Terashi appears to express concern regarding "clinical" use of FMD guidewires.  Statement number 60 is an e-mail from Mr. Terashi to Hernan Ricaurte, which was forwarded to Defendant Schulte, that reads:

> Henan-san I am attaching the files of the data (include penetration data etc) As you know Penetration Ability and tip stiffness are different. Tip stiffness shows the stiff from distal end of 1 cm. Penetration ability shows penetration power. As for the penetration power is influenced by sectional area in tip and distal core design. FMD CTO 10 have more penetration power than the Confianza.  It might be good for SPNC.  However I worry that FMD CTO 10 is used for clinical. Please let me know if you have any question. I will send the wires for peripheral to SPNC next week.

I agree with the Government that the implication from this e-mail is that Mr. Terashi was concerned that FMD guidewires would be used clinically - that is, that the FMD guidewires would be used in humans.

Furthermore, Agent Burke testified that Mr. Terashi admitted to creating two sets

of invoices for Spectranetics' purchase of FMD guidewires.  In one invoice, the guidewires were described as guidewires and listed at a certain price.  Mr. Terashi then created a second, false invoice with a lower monetary value and declared the guidewires as "wire rope."  (Hr'g Tr. 18-19).  By declaring the guidewires as "wire rope" valued at a lower price, the contents would not be inspected in the same manner before entering the United States. (Hr'g Tr. 16-19).  Agent Burke testified that according to Mr. Terashi, this double-invoicing scheme was undertaken at the request of Spectranetics. (Hr'g Tr. 17).  That Mr. Terashi acted at the request of Spectranetics suggests not that the double-invoicing scheme was undertaken out of concern for Japanese customs laws, as argued by Defendants, but rather out of concern for United States law.  Mr. Terashi's participation in the double-invoicing scheme, combined with his affixing the easy-to-peel-off "not for human use" labels is enough evidence to infer that he knew about and participated in the central objective of the conspiracy–importing the unappoved guidewires into the United States for use in humans.  Based on this evidence, I find that the Government has met its burden to prove that Mr. Terashi was a member of the charged conspiracy to defraud the FDA and the CBP by importing FMD guidewires for use in human patients.  Mr. Terashi's connection to the conspiracy "need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt." *Tranakos*, 911 F.2d at 1430 (10th Cir. 1990).  I consider below the question of whether particular statements by Mr. Terashi were in furtherance of the conspiracy.

**B.**     **Statements Made During the Course and In Furtherance of
Conspiracy**

The next element–that the statements be made in the course of and in

furtherance of the conspiracy–focuses on whether the statements promote the

objectives of the conspiracy.  *United States v. Peveto*, 881 F.2d 844, 852 (10th Cir.

1989).  "Statements by a conspirator are in furtherance of the conspiracy when they are

intended to promote the conspiratorial objectives."  *United States v. Townley*, 472 F.3d

1267, 1273 (10th Cir. 2007) (internal quotation marks omitted).  Similar to the "during

the course" requirement, "the 'in furtherance' requirement of 801(d)(2)(E) was intended

to be a significant obstacle for the government; it is to be strictly construed and narrowly

applied." *Rascon*, 8 F.3d at 1540.  The Tenth Circuit has held:

> When inquiring whether a statement was made in furtherance of a
> conspiracy, we do not focus on its actual effect in advancing the goals of
> the conspiracy, but on the declarant's intent in making the statement. No
> talismanic formula exists for ascertaining whether a particular statement
> was intended by the declarant to further the conspiracy and is therefore
> admissible in accordance with the agency theory of conspiracy. To the
> contrary, this determination must be made by examining the context in
> which the challenged statement was made.

*U.S. v. Perez,* 989 F.2d 1574, 1578-79 (10th Cir. 1993) (citations and internal quotation

marks omitted); *see also U.S. v. Ramirez-Birrueta*, No. 07-cr-00275, 2010 WL 2508392,

at *13 (D.Colo. June 15, 2010).  The statements need not be made to another

coconspirator.  *United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995).

Defendants challenge several categories of statements as not being made during

the course of or in furtherance of the conspiracy.  I consider each of these categories in

turn.

### 1.    Statements by Tyroshi Terashi

In addition to arguing that Mr. Terashi was not a member of the conspiracy, Defendants also argue that the statements by Mr. Terashi listed in the *James* log are inadmissible because they were not made in furtherance of the conspiracy. I disagree.  As noted by the Government, the statements by Mr. Terashi discuss, in some way, FMD guidewires.  Defendants contend, however, that many of the statements relate to a legitimate business relationship between FMD and Spectranetics. Even if this is the case, a statement need not have been exclusively made to further the conspiracy in order to be admissible under the coconspirator exception.  So long as the statement tends to advance the conspiracy, it will be admissible.  The statements by Mr. Terashi further the transactions between Spectranetics and FMD to import the FMD guidewires (for eventual use in humans) given that the statements are about purchasing, shipping, invoicing, declaring, delivering, or testing the guidewires.  *U.S. v. Robinson*, 956 F.2d 1388, 1394 (7th Cir. 1992) (holding that discussions regarding "price, payment terms, and arranging delivery" were in furtherance of the conspiracy.); *Perez*, 989 F.2d at 1578-79 (noting that examples of statements which may be found to satisfy the "in furtherance" requirement include "statements made to prompt further action on the part of conspirators") (quoting *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991).  As such, I find that the statements by Mr. Terashi should be provisionally admitted.

### 2.    Statements Made by Declarants *Before* They Allegedly Joined the Conspiracy

Next Defendants argue that statements by Trung Pham, Anton Benitez, and

Obinna Adighije were made prior to the time the declarant joined the conspiracy and are therefore inadmissible.  With respect to the statements by Defendant Trung Pham, the Government responded that it agrees that statements 124, 132, and 135 were made by Mr. Pham before he joined the conspiracy.  As such, the Government has withdrawn those statements and they are no longer at issue.  The remaining individuals, Anton Benitez, and Obinna Adighije are considered seriatim.

### a.    Statements by Anton Benitez

Defendants argue that based on the testimony of Agent Burke, statements 19, 20, 23, and 24, by Anton Benitez, predate the time that Mr. Benitez became a member of the conspiracy.  As such, the Defendants contend these statements could not possibly be "in furtherance" of the conspiracy.  The Government responds that the "statements themselves indicate they are in furtherance of the conspiracy and are reasonably close in time to the period described by the Special Agent during his testimony." (Gov. Resp. 12.).

As an initial matter, I agree that statements definitely made prior to the time the declarant joined the conspiracy could not be "in furtherance" of the conspiracy, and would therefore be inadmissible.  Here, however, I find that the statements by Anton Benitez should be provisionally admitted.

From the testimony presented at the April 28-29, 2011 hearing, it is clear that Anton Benitez was a member of the charged conspiracy.  Agent Burke testified that Anton Benitez was one of the Spectranetics employees who brought a whistleblower complaint regarding the conspiracy to defraud the FDA and the CBP (Hr'g Tr. 8) and that Mr. Benitez was "essential in the importation and distribution" of the FMD

13

guidewires. (Hr'g Tr. 28-29).  Indeed, he stated that Mr. Benitez was the Spectranetics representative who primarily dealt with the FMD guidewires from Japan. (*Id.*) And further that because some of the guidewires were unsterile when shipped from FMD, Mr. Benitez had them sterilized at Spectranetics prior to sending them to a doctor for use in humans.  (Hr'g Tr. 29).  Mr. Benitez therefore knew about the importation of the FMD guidewires and that the guidewires would be used in humans.  When asked on cross-examination exactly when Mr. Benitez joined the conspiracy, Agent Burke testified that Mr. Benitez joined in approximately August 2005.  The statements at issue here, were made in July 2005.  But the statements themselves directly relate to the purchase of the FMD wires (statements 19, 20) or the possible uses of such wires (statement 23). Given the large role Mr. Benitez played in the importation of the guidewires, the testimony of Agent Burke, and the statements themselves, I agree with the Government that these statements should be provisionally admitted.

### b.    Statements by Obinna Adighije

Defendants next argue that statements 156, 161, 163, 164, 168, 172, 173, 174, 183, 186, 188, 190, 193, and 196 were made prior to the time Defendant Adighije entered the charged conspiracy and therefore that those statements are inadmissible. The Government responds that each of the statements made by Defendant Adighije and challenged by Defendants were made "within a reasonable period of the time of when Agent Burke testified Adighije approximately entered the conspiracy" and further that the statements themselves show they were in furtherance of the conspiracy. (Gov. Resp. 14-15).

As discussed above, the determination about the admissibility of a particular

14

statement, must be made by "examining the context in which the challenged statement was made." *Perez*, 989 F.2d at 1578-79.  Here, the statements by Defendant Adighije are made in the context of Spectranetics reaching out to purchase BMT balloons and eventually import those balloons and test them in humans.  Evidence at the hearing showed that BMT understood that the balloons would be used in humans.  Special Agent Burke testified that when he spoke with a BMT executive Knut Sauerteig, Mr. Sauerteig "knew for certain that the balloons were going to be used in humans in the United States."  (Hr'g Tr. 20).  Although Defendants are correct that Agent Burke testified that Defendant Adighije joined in the conspiracy in approximately August 2007, considering the statements themselves and the context in which those statements were made, I agree with the Government that these statements by Defendant Adighije should be provisionally admitted.

### 3.    Statements Made by the Defendants to Investigators

Next, Defendants contend that statements 366, 367, 373, 374, 375, 376, 395, 396, 400, 401, 402, 403, and 405 should be excluded because these statements relate to concealment of the conspiracy and "the government has not presented any evidence that the defendants' concealment—through allegedly lying to the investigators—was part of the alleged conspiracy in this case. (Def.'s Joint Supp. Obj. 6).  The Defendants further argue that the summaries of these statements contained in the *James* log are insufficient because the Government failed to identify the exact statements with the requisite level of particularity.  The Government responds that statements made to investigators–both internal investigators hired by Spectranetics, and investigators from the FDA–are evidence of concealment and that such statements are admissible under

the 801(d)(2)(E) exception.  The Government further contends that the statements in the log are specific enough.

In this instance, I agree with the Defendants that statements made to conceal criminal conduct after the main objective of the conspiracy has either failed or been achieved are not admissible as coconspirator statements.  *Dutton v. Evans*, 400 U.S. 74, 81 (1970) ("It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise.").  *See also Lutwak v. United States*, 344 U.S. 604, 616-18 (1953); *Krulewitch v. United States*, 336 U.S. 440, 443-44 (1949) (generally a conspiracy ends when its central criminal purposes have been attained); *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984).  The "vital distinction" is "between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Grunewald v. U.S.*, 353 U.S. 391, 405 (1957).

In this case, once Defendants imported the medical devices into the United States and tested them in humans, statements concealing that importation and testing (the essential objectives of the conspiracy) were "acts of covering up" rather than acts in furtherance of the conspiracy.  The Government may not extend the life of the conspiracy by alleging a subsidiary conspiracy to conceal.  *Grunewald*, 353 U.S. at 401 (1957).  Although the statements proffered by the Government may show that the

16

Defendants attempted to cover up the conspiracy, this is not sufficient. Once the central criminal purposes of a conspiracy have been accomplished, "a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment." *Id.*

Statements made to investigators after the importation and human testing of the medical devices stand in contrast to acts of concealment in furtherance of the main criminal objective–such as falsely declaring the guidewires coming into the United States. Unlike statements made to investigators after achieving the main objectives of the conspiracy, the false declarations furthered the conspiracy by getting the wires into the United States so they could be used in humans. The Government has not shown that concealment of the conspiracy after the fact was necessary to the main criminal objectives of the conspiracy. Without more, the statements made to investigators which were designed to conceal the conspiracy are not proper co-conspirator statements. Accordingly, statements 366, 367, 373, 374, 375, 376, 395, 396, 400, 401, 402, 403, and 405 are not provisionally admitted under F.R.E. 801(d)(2)(E).

### 4.    Statements Made by Individuals Other than Defendants to the FDA

Next, the Defendants object to statements that individuals associated with Spectranetics reported were made to them by the Defendants. These include statements numbered 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 423, 432, and 433, 434, 435, and 436. Defendants object to these entries on the Government's *James* log on the grounds that the Government has only provided summaries of the

interviews and provided descriptions of the statements they seek to admit, but not the exact statements themselves. The Government responds that the *James* log "provides a synopsis of the statement and references the entire report on which the synopsis is based, specifically identifying the notes or report in which the statements are contained." (ECF No. 152, Gov. Resp. 21).  The Government thus argues that the summaries of the statements are sufficient.

The purpose of the *James* proffer and log is to assist the Court in making a pre-trial determination on the admissibility of evidence under Rule 801(d)(2)(E).  And while a more specific log may in some cases be more helpful in assisting the Court in determining whether to provisionally admit co-conspirator statements (*see U.S. v. Ramirez-Birrueta*, No. 07-cr-00275, 2010 WL 2508392, at *13 (D.Colo. June 15, 2010), the exact verbatim statements are not necessarily required.  As I expressed during the April 29, 2011 hearing, if the Government has a memorandum that summarizes what an indicted co-conspirator or unindicted co-conspirator has said, and that statement is in furtherance of the conspiracy, then even if the summary does not include the declarant's statement verbatim, it could still be admissible under 801(d)(2)(E).  Although I agree that several of the statements listed in the *James* log are quite general, I nevertheless find that the statements may be provisionally admitted.  For example, statement 410, is representative of the statements challenged by the Defendants and reads as follows:

> MOI of Robert Gallino dated 8/4/2009.  In general, Gallino recalled general discussions with and statements made by PHAM involving evaluation forms, visits to gallino's lab, BMT PTA Balloons, Guidewires and FMD Truefinder guidewires. Gallino's statements are referenced in MOI dated 8/4/2009 Bates stamped AFSN001646-1648.

This entry refers generally to statements by Pham on numerous topics. But evidence at the hearing, as well as the statements in the Government's *James* log, show that each of these topics–evaluation forms, testing of the medical devices in a lab, BMT balloons, and FMD guidewires–relate to the central objectives of the conspiracy. Also, the entry notes that "Gallino's statements are referenced in MOI dated 8/4/2009 Bates stamped AFSN001646-1648. Accordingly, although the entry does not specifically detail everything Mr. Pham stated, given the evidence presented at the hearing, the content of the actual statement, I find that it provisional admission of the statements, subject to the Government making the required showing at trial, is appropriate. A similar analysis is applicable to each of the summary entries to which the Defendants object. Accordingly, I find the Government has provided sufficient information to provisionally admit statements 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 423, 432, 433, 434, 435, and 436.

### 5. Statements that the Government Has Not Demonstrated Were Made in Furtherance of the Conspiracy

Defendants next argue that the Government has failed to prove that statement numbers 162, 192, 218, 237, 248, 298, 303, 372, 386, 387, 420, 421, and 437 were intended to promote the conspiratorial objectives as required by F.R.E. 801(d)(2)(E). In two footnotes Defendants also argue that statements 417, 421, 432, 436, and 437 are also excludable on the basis that they are efforts of one alleged co-conspirator to shift blame to another, which cannot be in furtherance of the alleged conspiracy. In addition, Defendants argue that statements numbered 227, 236, 268, and 347 are mere narratives and should not be admitted. In its response, the Government withdraws

19

statement numbers 192, 237, 372, 386, 387, and 420 from its proffer.  Accordingly, these statements are no longer at issue.

With respect to the remaining statements, I find that statements 162, 218, 227, 236, 248, 417, 432, 436, and 437 should be provisionally admitted.  The Government has presented sufficient evidence that these statements are in furtherance of the conspiracy and these statements are not mere narratives.

I agree with Defendants, however, that the Government has not met its burden with respect to statement numbers 268, 298, 303, and 347, and that these statements should not be provisionally admitted.  In addition, 421 is a statement by one co-conspirator attempting to shift blame to another co-conspirator.  *See United States v. Blakey*, 960 F.2d 996, 998 (11th Cir. 1992).  As such, statement 421 is not admitted.

### 6.     Statements Related to ISR

In light of the May 5, 2011 Second Superseding Indictment, which removed the allegations in the previous indictment related to off-label promotion for a procedure called in-stent restenosis ("ISR"), I agree with the Defendants that statements related to ISR are not "in furtherance" of the conspiracy as currently charged.  The Government also concedes this point and responds to Defendant's objections by withdrawing statements 182, 284, 287, 288, 289, 307, 309, 322, 411, and 432.  (Gov. Resp. 25-28). The Government further agrees to "sanitize" or redact numbers 261, 366, 367, and 401 of any ISR related content, after which the remaining statements may be provisionally admitted.  This leaves statement numbers 250, 262, and 419, which the Defendants contend should be removed or redacted.  I agree with the Government that statements

these statements 250, 262, 419 do not relate solely to ISR and therefore provisionally admit the statements.

> ### 7.    Statements by Individuals the Government has Conceded are Not Co-Conspirators

Finally, the Defendants object to statement numbers 349 and 241 on the grounds that these statements were made by individuals whom the Government has conceded are not co-conspirators.  The Government responds that it will withdraw statement 349 and "sanitize" statement number 241 to refer only to portions of the statement made by Defendant Pham.  As such statement number 241 is provisionally admitted subject to such redaction.

## IV.    CONCLUSION

Accordingly, it is

ORDERED that the Government has made a preliminary showing that Defendants Pham, Ricaurte, Schulte, and Adighije were members of the conspiracy set forth in the Second Superseding Indictment.  Further, I have provisionally admitted certain statements, as detailed in this Order, because they appear to meet the foundational requirements of Rule 801(d)(2)(E).  If the Government fails to establish the existence of foundational facts at trial with respect to the provisionally admitted statements, the Defendants may move for appropriate sanctions including mistrial.

Dated:  September 9, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge